UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH GIBBS,<br>　　　　Plaintiff,<br>　　v.<br>T. WOOD, et al.,<br>　　　　Defendants. | Case No. 15-cv-04115-PJH<br><br>**ORDER GRANTING DEFENDANTS'**<br>**MOTION FOR SUMMARY JUDGMENT**<br>Re: Dkt. No. 51 |

This is a civil rights case brought pro se by a state prisoner under 42 U.S.C. § 1983. His claims arise from his detention at Pelican Bay State Prison ("PBSP"). Plaintiff alleges that defendants placed him in restricted confinement and kept him in that confinement in retaliation for his protected conduct.[1] Defendants filed a motion for summary judgment. Plaintiff filed an opposition and defendants filed a reply. For the reasons set forth below, the motion for summary judgment is granted.

## MOTION FOR SUMMARY JUDGMENT

### Legal Standards

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The moving party for summary judgment bears the initial burden of identifying

---

[1] All other claims were previously dismissed. Docket No. 34.

those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. *Id.* If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins. *Id.*

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). *Accord Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995) (prisoner suing prison officials under § 1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action did not advance legitimate penological goals, such as preserving institutional order and discipline); *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam) (same); *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985) (contention that actions "arbitrary and capricious" sufficient to allege retaliation). The prisoner must show that the type of activity he was engaged in was constitutionally protected, that the protected conduct was a substantial or motivating factor for the alleged retaliatory action, and that the retaliatory action advanced no legitimate penological interest. *Hines v. Gomez*, 108 F.3d 265, 267-68 (9th Cir. 1997) (inferring retaliatory motive from circumstantial evidence).

A prisoner cannot show that a prison committee's decision to discipline or segregate him was retaliatory if there was "some evidence" to support the committee's decision. *Barnett*, 31 F.3d at 816 (citing *Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985)) (summary judgment for defendants proper on claim of retaliatory reclassification when reclassification supported by "some evidence" and served legitimate penological

2

purpose). But the *Barnett* "some evidence" standard, applicable to committee administrative decisions, does not apply to a claim that a prison guard falsely accused a prisoner of violating a prison rule in retaliation for exercise of a constitutional right. *See Hines*, 108 F.3d at 269; *see also Bruce v. Ylst*, 351 F.3d 1283, 1289-90 (9th Cir. 2003) (if there is a genuine issue of material fact as to whether the action was retaliatory, "prison officials" may not defeat a retaliation claim on summary judgment simply by contending that there was "some evidence" to support the action taken and that the action served a valid penological purpose).

**Facts**

A review of the record indicates that the following facts are undisputed unless otherwise noted:[2]

During the relevant time, plaintiff was incarcerated at PBSP. Amended Complaint ("Am. Compl."), Docket No. 11 at 1-3. Defendant Royal was a correctional counselor; defendant Wood and defendant Evans were correctional officers. *Id.*

Inmate privileges are governed by an inmate's behavior, custody, classification and assignment. Cal. Code Regs. tit. 15 § 3044(c). In privilege group C, also known as C-status, inmates get one quarter of their normal canteen draw, no personal property packages, limited yard access, only emergency telephone calls, and reduced visits. *Id.* at § 3044(f). An inmate placed in privilege group C is considered a "program failure." *Id.* at § 3044(b)(5)(A). A program failure is defined as an inmate who has significant disciplinary history within 180 days. Two serious rule violations within 180 days are considered evidence of significant disciplinary history and could result in the inmate being considered a program failure. *Id.* at § 3000.

On December 11, 2012 nondefendant Dr. Hughes ordered that plaintiff attend a mental health treatment program as part of the Enhanced Outpatient Program ("EOP"). Opposition (Docket No. 58) at 15. A correctional officer attempted to escort plaintiff to the

---

[2] Plaintiff presents a considerable amount of facts in his opposition that are not relevant to the claim in this action and will not be discussed.

3

mental health treatment program. Motion for Summary Judgment ("MSJ") Sanchez Decl. at AG 0001. Plaintiff refused to attend and according to defendants stated, "If I go to the EOP, I will kill the first inmate I see." *Id.* Plaintiff denies he made that exact statement; rather, plaintiff contends he stated that if he was sent to EOP, he would fight the first inmate he saw. Docket No. 59 at 2. Plaintiff was placed in Administrative Segregation ("Ad. Seg.") and issued a rules violation report for this threat to use force against another person. MSJ Sanchez Decl. at AG 0001, 0003.

Plaintiff submitted a grievance against nondefendant Dr. Hughes regarding the order to attend the mental health treatment program, contending that Dr. Hughes retaliated against plaintiff. Opposition at 16. Plaintiff also submitted a grievance on December 30, 2012, alleging that he had been placed in Ad. Seg. for more than 10 days without a classification hearing. Am. Compl. at 8.

An Ad. Seg. classification hearing was held on January 2, 2013. MSJ Sanchez Decl. at AG 0010. The classification committee, which included defendant Wood ordered that plaintiff be released to general population despite his pending rule violation for threats of force against another. *Id.* Plaintiff was to be released to facility A. *Id.* Plaintiff agreed with the committee's ruling. *Id.* On January 4, 2013, plaintiff withdrew the grievance about his time in Ad. Seg. citing a conversation he had with defendant Wood. Am. Comp. at 9.

On the same day, January 4, 2013, nondefendant correctional officer Davis arrived to escort plaintiff from Ad. Seg. to the A4 general population housing unit. *Id.* at AG0011; Opposition at 19; Docket No. 59 at 4. The transfer to another cell block did not occur. MSJ Sanchez Decl. at AG0011; Opposition at 20. Another nondefendant, correctional sergeant Curtis, tried to resolve the situation, but no agreement could be reached. MSJ Sanchez Decl. at AG 0016.

Defendants assert that plaintiff refused the move to general population stating, "I would rather stay in the holding cell or Ad Seg than go to A4 [a general population unit.]" *Id.* at AG0011. Defendants also assert that plaintiff stated he would go to the "Hobby Shop ('A' Facility Holding Cell Area) before I to go A4." *Id.*

Plaintiff asserts that he was under the impression based on a conversation with defendant Wood, that plaintiff would be housed in A8, not A4. Opposition at 19. Officer Davis told plaintiff he was to be taken to A4. *Id.* at 20. Plaintiff asked to speak to defendant Wood, so Officer Davis placed plaintiff in a holding cell while he called his superiors. *Id.* Sergeant Curtis arrived because defendant Wood had gone home. *Id.* Sergeant Curtis informed plaintiff that he did not know about an agreement for a move to this other building, but Sergeant Curtis was to take plaintiff to A4. *Id.*

Plaintiff stayed in the holding cell until he was taken to A4 the next day and placed in general population. *Id.* at 21; Docket No. 59 at 4; Docket No. 60, Ex. L. Officer Davis issued plaintiff a rules violation report for willfully resisting, delaying or obstructing a peace officer for plaintiff's failure to follow orders and move to the new general population housing unit. Opposition at 21. Plaintiff later filed a grievance against Officer Davis for placing him in the holding cell. Opposition at 22.

As previously noted, on January 4, 2013, plaintiff withdrew the December 30 grievance against defendant Wood. Opposition at 19; Docket No. 60, Ex. J. Later that same day, January 4, 2013, plaintiff told another official that he intended to reinstate the grievance against defendant Wood. Opposition at 20. On January 28, 2013, plaintiff attempted to reinstate the withdrawn grievance by appealing it, but the appeal was rejected for changing the issue from his time in Ad. Seg. to his move to general population. Docket No. 60, Ex. J. Plaintiff states that at some point in January 2013, during an Interdisciplinary Treatment Team ("IDTT") meeting, plaintiff was telling another nondefendant, that he had reinstated his grievance against defendant Wood, when defendant Melton interrupted, stating, "That is why I'm placing you on C status." Am. Compl. at 9. Plaintiff does not cite the date this occurred. *Id.*; Opposition at 24.

At a January 18, 2013, rules violation hearing, plaintiff was found guilty of the first offense, which occurred on December 11, 2012: threatening to use force or violence against another person. Cal. Code Regs. tit. 15 § 3005(d)(1). Defendant Wood had reviewed and approved the rule violation report. MSJ Sanchez Decl. at AG0001-0004.

On January 23, 2013, plaintiff filed a new grievance against defendant Wood,

5

alleging that Wood had retaliated against plaintiff at the January 2 hearing due to plaintiff's December 30 grievance. Opposition at 24; Docket No. 60, Ex. P.[3]

On January 25, 2013, a rules violation hearing was held for plaintiff's second offense: willfully resisting, delaying or obstructing a peace officer for his refusal to move to the A4 general population unit. *Id.* at AG0013. Plaintiff was found guilty. Cal. Code Regs. tit. 15 § 3005(a). Plaintiff was assessed a 90-day credit forfeiture and placed on C-status by nondefendant Lieutenant Pepiot. MSJ Sanchez Decl. at AG0013; Opposition at 26.

On February 14, 2013, plaintiff appeared before an institutional committee for his annual program review. *Id.* at AG0025. Defendants Wood and Melton were the committee chairpersons, and defendant Royal was the recorder. *Id.* The committee determined that plaintiff had received two serious rule violations within a 180-day period. Both violations are detailed above. Plaintiff was deemed a program failure and was continued on C-status for 90 days, from February 14, to May 14, 2013. *Id.*

Plaintiff was the subject of other rule violation incidents in the months that followed. *Id.* at AG0025-28. Plaintiff disputes the evidence and circumstances of those incidents. Opposition at 2-38. Plaintiff filed many inmate appeals concerning the rule violation incidents and other issues. *Id.*

**Analysis**

Plaintiff alleges that he was placed in and continued on C-status by defendants in retaliation for the filing of grievances. Defendants argue that plaintiff was placed on C-status because of his disciplinary violations: threatening to harm another inmate on December 11, 2012, and delaying a peace officer in the performance of his duties on January 4, 2013.

It is undisputed that on December 11, 2012, a correctional officer had orders to take plaintiff to a mental health program and plaintiff threatened to harm another inmate if

---

[3] Plaintiffs separate retaliation claim against defendant Wood regarding this December 30 grievance and January 2 hearing was already dismissed as untimely. Docket No. 34.

he was taken. Defendants state that plaintiff had threatened to kill another inmate and plaintiff states that he had threatened to fight another inmate. Assuming plaintiff's statement is correct, he still threatened to use force against another person which correctly resulted in disciplinary action. Plaintiff argues that the doctor who ordered him to the mental health program acted in bad faith; therefore, he was not guilty of the underlying rules violation report. The doctor is not a defendant in this action. Even assuming the doctor had acted in bad faith, nothing in the record suggests that the correctional officer who reported the threat was aware of this fact. The correctional officer was simply trying to escort plaintiff to the medical appointment when plaintiff made the threat. Plaintiff was later found guilty of the rules violation and there was some evidence to support the decision. *See Barnett.* There is no evidence that the correctional officer falsely accused plaintiff in retaliation for exercising a constitutional right. In fact, plaintiff makes no allegations against the officer, who is not a defendant in this action, and plaintiff concedes that he made the threat against other inmates.

It is also undisputed that on January 4, 2013, nondefendant correctional officer Davis was to escort plaintiff from Ad. Seg. to the less restrictive A4 general population housing unit. It is undisputed that plaintiff had previously agreed with the decision to move to the less restrictive housing. Plaintiff argues that he had an agreement with defendant Wood that he would go to the A8 housing unit. However, it is undisputed that correctional officer Davis had no knowledge of this agreement. It is also undisputed that when provided with this information, correctional officer Davis contacted his superiors to resolve the situation. Defendant Wood was no longer at the prison that day so a sergeant arrived to facilitate a resolution, but the sergeant also had no knowledge of the agreement to take plaintiff to A8. Plaintiff was later found guilty of the rules violation for refusing to follow correctional officer Davis' orders to move to the A4 general population housing unit. Even assuming that defendant Wood had agreed that plaintiff could move to the A8 housing unit, it is undisputed that correctional officer Davis had no knowledge of this agreement and was simply trying to escort plaintiff from Ad. Seg. to his new less-

7

restrictive general population housing unit. There was some evidence to support the rules violation guilty finding. *See Barnett.* There is no evidence that correctional officer Davis, who had cited plaintiff for this rules violation, had falsely accused him in retaliation for exercising a constitutional right. In fact, plaintiff makes no such allegation and does not name Davis as a defendant in this action.

While it is possible that other prison staff were acting in bad faith in their actions towards plaintiff, it is undisputed that the guards who were escorting plaintiff to these various locations were not. The guards were carrying out their duties when plaintiff committed his rule violations, and plaintiff being found guilty of the violations was independent of the retaliation plaintiff alleges was committed.

Plaintiff's main argument is that on February 14, 2013, the committee that placed him on C-status did so in retaliation for his filing grievances. Yet, it is undisputed that plaintiff had already been on C-status for several weeks prior to February 14, 2013, arising from a prior hearing with a nondefendant. Defendants in this action continued plaintiff on C-status due to the two disciplinary violations noted above.

Because there was some evidence to support the disciplinary violations and the committee's decision, plaintiff has failed to show the decision was retaliatory. *Barnett*, 31 F.3d at 816; *see also Alexander v. Vittitow*, No. 17-1075, 2017 WL 7050641, at *4 (6th Cir. Nov. 9, 2017) (prison disciplinary finding of guilt supported by "some evidence" precludes prisoner's claim that the proceeding was retaliatory); *O'Bryant v. Finch*, 637 F.3d 1207, 1215 (11th Cir. 2011) ("If a prisoner is found guilty of an actual disciplinary infraction after being afforded due process *and* there was evidence to support the disciplinary panel's fact finding, the prisoner cannot later state a retaliation claim against the prison employee who reported the infraction in a disciplinary report."); *Nifas v. Beard*, 374 F. App'x 241, 244 (3d Cir. 2010) ("Nifas's retaliatory discipline claim fails because there is 'some evidence' supporting the guilty findings . . .").

Keeping plaintiff on C-status due to the rules violations served a legitimate penological interest and reasonably advanced a legitimate correctional goal. Nor has

8

plaintiff presented sufficient evidence that this is a situation where the underlying rules violations were issued in retaliation. *See Hines*, 108 F.3d at 269; *see also Ylst*, 351 F.3d at 1289-90. His conclusory statements with no support that the underlying rules violations were retaliatory are insufficient to counter summary judgment and are not supported by the undisputed evidence.

With respect to defendants Wood and Royal, plaintiff has also failed to demonstrate that keeping him on C-status as of February 14, 2013, was due to his protected conduct. It is undisputed that plaintiff filed many grievances accusing staff of retaliation and that he was also guilty of multiple rules violations. Plaintiff has not presented any evidence that certain grievances, and not the rules violations, were the motivating factor for these two defendants.

With respect to defendant Melton, plaintiff alleges that at some unknown date in January 2013, Melton stated that he was placing plaintiff on C-status due to plaintiff reinstating a grievance. It seems probable that the reinstated grievance at issue was the grievance plaintiff withdrew on January 4, 2013, and unsuccessfully appealed on January 28, 2013. While it is undisputed that defendant Melton was on the February 14, 2013, committee that continued plaintiff on C-status due to his rules violations, it is also undisputed that defendant Melton had no involvement with plaintiff's initial placement on C-status on January 25, 2013. Even assuming that defendant Melton made this inappropriate statement, he is still entitled to summary judgment.

If the statement was made in early January 2013, plaintiff was not placed on C-status as a result. Plaintiff was not placed on C-status until January 25, 2013, as the result of a guilty finding at an RVR hearing, and it was nondefendant Lt. Pepiot who did so. If the statement was made in late January 2013, plaintiff was not placed on C-status as a result. Plaintiff's C-status was not continued until February 14, 2013, as the result of an annual program review at which an institutional committee determined that plaintiff was a program failure. While defendant Melton was on the committee, the committee's decision was due to the two rules violations and the findings of guilt by others at the

9

January 18 and January 25 RVR hearings. Plaintiff has failed to set forth specific facts showing that there is a genuine issue for trial. For all these reasons, summary judgment is granted for all defendants.

**Qualified Immunity**

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The rule of "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Defendants can have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation. *Id.* at 205. A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (overruling the sequence of the two-part test that required determining a deprivation first and then deciding whether such right was clearly established, as required by *Saucier*). The court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case. *Pearson*, 555 U.S. at 236.

The court has not found a constitutional violation, and, even if there was a violation, defendants would be entitled to qualified immunity. It would not be clear to reasonable officials in these positions that continuing plaintiff on C-status due to his rules violations would have violated the law. Assuming defendant Melton made the inappropriate statement to plaintiff he would still be entitled to qualified immunity. Plaintiff was found guilty by other parties of multiple rules violations and the regulations specify that an inmate with those violations should be on C-status. Defendants are entitled to qualified immunity.

10

**CONCLUSION**

1. For the reasons set forth above, the motion for summary judgment (Docket No. 51) is **GRANTED**.

2. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: June 28, 2018

_____
PHYLLIS J. HAMILTON
United States District Judge

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH GIBBS,<br><br>        Plaintiff,<br><br>  v.<br><br>T. WOOD, et al.,<br><br>        Defendants. | Case No. 15-cv-04115-PJH<br><br>**CERTIFICATE OF SERVICE** |

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on June 28, 2018, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Kenneth Gibbs ID: #:E-38282
California State Prison - Los Angeles County
P.O. Box 4490, Facility:B, Bldg.:4, Bed:137
Lancaster, CA 93539

Dated: June 28, 2018

                                               Susan Y. Soong
                                               Clerk, United States District Court

                                               By:_____
                                               Kelly Collins, Deputy Clerk to the
                                               Honorable PHYLLIS J. HAMILTON